IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CHONG HUI TOPASNA, ) | |
| PETITIONER, ) | |
| ) | |
| V. ) | Case no. |
| ) | |
| JOON JACK KIM and ) | |
| HYE WON SHIN ) | |
| RESPONDENTS. ) | |

**VERIFIED PETITION FOR INJUNCTION AND**
**FOR MANDATORY INJUNCTION,**
**REQUEST FOR EXPEDITED HEARING**
**AND INCORPORATED MEMORANDUM OF LAW**

Petitioner, Chong Hui Topasna, alleges the following upon information and belief:

**Action for Injunction and Mandatory Injunction**

1.  This is an action for injunction and mandatory injunction brought by Petitioner Chong Topasna against Respondents, Joon Jack Kim and Hye Won Shin. Petitioner does not seek a temporary restraining order as envisioned under

1

Georgia law (O.C.G.A. 9-11-65(b)) nor a preliminary injunction under F.R.C.P. 65, but does request an expedited evidentiary hearing on the merits, after proper notice to Respondents, or in the alternative an interlocutory injunction, pending trial on the merits.

## Introduction

2.     Petitioner, Chong Topasna, is a resident citizen of Fulton County Georgia residing at 901 Abernathy Road N.E. Apt # 3300, Sandy Springs, GA 30328.

3.     Respondents, Joon Jack Kim and Hye Won Shin, who are husband and wife respectively, are resident citizens of Shelby County, Tennessee, residing at 10623 Midnight Sun Drive, Collierville, Tennessee 38017.

4.     Petitioner Chong Topasna established bank account # 7819 at a Clayton County branch of Wachovia Bank, now Wells Fargo Bank, located in the City of Jonesboro, Clayton County, Georgia in the Northern District of Georgia, and at all times relevant to this petition has conducted her banking business at a branch of Wells Fargo Bank located at 6300 Roswell Road, NE, Sandy Springs, Fulton County, Georgia, also in the Northern District of Georgia.

## Diversity Jurisdiction

5.      The District Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332 in that the parties are citizens of different States and the amount in controversy exceeds $75,000.[1]

## Personal Jurisdiction

6.      The District Court has personal jurisdiction over the respondents in that the initial discussions, involving both respondents which led to the verbal agreement for the transactions described in paragraph 12 below, which forms the basis of this proceeding occurred both in person in the Northern District of Georgia;[2] the subject transactions instituted by Respondent Joon Jack Kim affected monies in a bank account established and maintained in the Northern District of Georgia, and both respondents maintain minimum contacts [3] with the State of Georgia.

---

[1] At issue in this case is a type of cryptocurrency known as "Bitcoin." The total number of Bitcoin units at issue are 3.42153424; the current market value of a single Bitcoin unit is currently $37,831.50 as of May 19, 2021 at 12:30pm EDLST.

[2] Some follow up discussions occurred via cell phone communications between Petitioner and Respondent Joon Jack Kim during which discussions, Petitioner was personally located in the Northern District of Georgia.
[3] See *Walden v. Fiore,* 571 U.S. 277, 283-84 (2014), discussed below.

7. Respondent, Hye Won Shin is the biological daughter of Petitioner. Together Respondents, Joon Jack Kim and Hye Won Shin have children who are the grandchildren of Petitioner.

8. Respondent Joon Jack Kim currently owns real property located at 970 Sidney Marcus Blvd., NE Unit #1103, Atlanta, Georgia 30324.[4] Respondents Kim and Shin previously lived in the Northern District of Georgia in the residence located at 970 Sidney Marcus Blvd., NE Unit #1103, Atlanta, Georgia, before moving to Tennessee in or about late 2010. Respondent Shin previously lived in the Northern District of Georgia at 2519 Whistle Stop Drive, Norcross, GA 30071, as well.

9. Respondent Joon Jack Kim currently owns and operates a business located in southwestern Tennessee, for which he personally travels to and purchases products and supplies from vendors located in the Northern District of Georgia. Respondent Hye Won Shin accompanies her husband during these business trips from Tennessee to Georgia and they and their children have often visited with Petitioner and other family members during these business trips.

---

[4] This real property has been under contract for sale since on or about April 24, 2021.

4

## Facts

10. During one of the Respondents' business trips to the Northern District of Georgia described in paragraph 9 above, Respondent Joon Jack Kim proposed what amounts to a fiduciary/principal-agency relationship between himself and Petitioner. Specifically, in or about mid-2017, Respondent Joon Jack Kim, during a visit to Petitioner in the Northern District of Georgia, convinced Petitioner, Chong Topasna to invest in cryptocurrency through an exchange known as Coinbase, the workings of which Petitioner did not understand. Respondent, Joon Jack Kim suggested to Petitioner that he himself would maintain and manage the investment in cryptocurrency for Petitioner. Respondent Hye Won Shin was present during these discussions explicitly concurred with her husband, Joon Jack Kim's proposal. Petitioner eventually accepted Respondent Joon Jack Kim's proposal. Therefore, Respondent Joon Jack Kim voluntarily undertook an implied fiduciary duty to act on behalf of and in the best interests of Petitioner in managing and controlling assets belonging to Petitioner. Alternatively, Respondent assumed the role of Agent on behalf of Petitioner as Principal.

11. Thereafter, with the consent of Petitioner, Respondent took control of Petitioner's monies and invested such monies in cryptocurrency through the Coinbase exchange. Through a concept known as "wallet," Respondent, Joon Jack Kim acquired access to and control over Petitioner's investments in cryptocurrency

through a physical computer key purchased from a third-party vendor known as Trezor, which enables secure custody of cryptocurrency.

12. To that end, on or about the dates set forth below, Respondent Joon Jack Kim, with the knowledge and consent of Petitioner, transferred monies in the amounts shown below from Petitioner's bank account # 7819 at Wells Fargo Bank to Coinbase.Com/Btc to purchase cryptocurrency "Bitcoin" units in the name of Chong Hui Topasna for such purpose.

| Date | Description | Amount In U.S. Currency |
|---|---|---|
| 8/15/17 | Transfer from Wells Fargo Acc. # 7819 ino Chong H. Topasna to Coinbase.Com/Btc 170814 D2Rzoaf3 ino Chong Hui Topasna. | 1,999.35 |
| 8/29/17 | Transfer from Wells Fargo Acc. # 7819 ino Chong H. Topasna to Coinbase.Com/Btc 170828 Pp6C412R ino Chong Hui Topasna. | 2,000.00 |
| 9/6/17 | Transfer from Wells Fargo Acc. # 7819 ino Chong H. Topasna to Coinbase.Com/Btc 170905 8U5Za9Gw ino Chong Hui Topasna. | 194.28 |
| 11/10/17 | Transfer from Wells Fargo Acc. # 7819 ino Chong H. Topasna to Coinbase.Com/Btc 171109 P5Epu2Wj2Ded ino Chong Hui Topasna. | 3,000 |
| 11/13/17 | Transfer from Wells Fargo Acc. # 7819 ino Chong H. Topasna to Coinbase.Com/Btc 171110 4Wpco3Y72Ded ino Chong Hui Topasna. | 7,442.75 |

| 11/21/17 | Transfer from Wells Fargo Acc. # 7819 ino Chong H. Topasna to Coinbase.Com/Btc 171120 Y46Amisb2Ded ino Chong Hui Topasna. | 7,882.29 |
|---|---|---|
| 12/18/17 | Transfer from Wells Fargo Acc. # 7819 ino Chong H. Topasna to Coinbase.Com/Btc 171215 Fdx171U12Ded ino Chong Hui Topasna. | 2,030 |
| 1/3/18 | Transfer from Wells Fargo Acc. # 7819 ino Chong H. Topasna to Coinbase.Com/Btc 171231 Xqkb0Bgf2Ded ino Chong Hui Topasna. | 1,115.19 |
| 10/26/2020 | Transfer from Wells Fargo Acc. # 7819 ino Chong H. Topasna to Coinbase.Com/Btc SD1300 Qt9Khuxj2Ded ino Chong Hui Topasna. | 13,261.71 |
|  | **Total Monies Transferred to Coinbase.Com/Btc ino Chong Hui Topasna by Respondent Joon Jack Kim.** | **$38,925.57** |

13. Sometime after the last monies were transferred, as set forth in the table in paragraph 12 above, and unrelated to any of these transactions, relations between Petitioner and Respondents deteriorated to a point of non-cooperation by Respondents. Therefore, on or about February 7, 2021, during a recent business trip by Respondents to the Northern District of Georgia, Petitioner requested, and Respondent Joon Jack Kim agreed to return control of the subject cryptocurrency "Bitcoin" units to Petitioner. This discussion occurred in person between Petitioner and Respondent Joon Jack Kim in the Northern District of Georgia. At the time of

these discussions, Respondent Hye Won Shin, who accompanied her husband during this trip, was present elsewhere in the Northern District of Georgia.

14. However, Respondent Joon Jack Kim has since, failed to return possession and control over the subject cryptocurrency to Petitioner. Upon information and belief,[5] Respondent Hye Won Shin, who is Respondent Joon Jack Kim's wife, has taken physical control of the computer Trezor "wallet" access key and, contrary to Respondent Joon Jack Kim's agreement with Petitioner, is prohibiting access to the key, and thus control over the subject cryptocurrency "Bitcoin" units by Petitioner.

15. By letter dated March 17, 2021, sent by Petitioner's attorneys to the respondents, Petitioner informed both Respondents that Petitioner was then "rescinding any authority she has previously conveyed to either of [them] to manage and/or control" her investment in cryptocurrency. Such letter further informed the respondents that in or about February 2021, Petitioner's son, Eric Topasna set up a 'wallet' for the purposes of taking control over the subject cryptocurrency investment.[6] However, the respondents have failed to provide control over the

---

[5] On February 21, 2021, Respondent Joon Jack Kim in a text message to petitioner's son, Eric Topasna, advised that "[Respondent Hye Won Shin] took our Trezor and now I'm stuck in the middle of a situation between her and your mom and my kids."

[6] From on or about February 21 - 23, 2021, Petitionr's son, Eric Topasna, at Petitioner's request was able to access and take custody of 1.1 cryptocurrency Bitcoin units, purchased by Respondent Joon Jack Kim with monies belonging to Petitioner, and place them in his own wallet for the benefit of Petitioner. Mr. Kim had left these cryptocurrency units

subject cryptocurrency investment as directed by Petitioner and further appear unwilling to do so voluntarily.

16. While Petitioner is currently unaware of any other affirmative steps that Respondents may have undertaken to deprive her of her property, this action appears necessary for Petitioner to gain her rightful access to the subject cryptocurrency investment.

### *Memorandum of Law*

### *(a) Injunction*

Georgia law provides for interlocutory injunction where (1) there is a substantial threat that the movant will suffer irreparable harm if the requested injunction is not granted; (2) the threatened harm to Petitioner is greater than any potential harm to respondent by the requested injunction; (3) there is a substantial likelihood that petitioner will prevail on the merits; and/or (4) granting injunction will serve the public interest. *Bishop v. Patton*, 706 S.E. 2 634, 638-39 (GA. 2011). Under Georgia law, the moving party is not required to prove all four factors; rather, these are merely factors to be considered and weighed by the Court. *SRB Inv. Servs., LLLP v. Branch Banking & Trust Co.*, 709 S.E. 2d 267, 271 n. 7.

---

unsecured. Therefore, as set forth above, 3.42153424 cryptocurrency Bitcoin units purchased by Respondent Joon Jack Kim with Petitioner's money, pursuant to their agreed upon arrangement, remain in Respondent Kim's wallet to which Petitioner has no access.

While the similar federal standard considers (1) the threat that the moving party will otherwise suffer irreparable harm; (2) the moving party's likelihood of success on the merits; (3) possible hardships to the moving party outweigh any resulting harm to the respondent(s); and, (4) granting the injunction is in the public interest (*Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008)), in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), the Supreme Court held that a federal district court hearing a case under diversity jurisdiction must apply a preliminary injunction standard that would be applied by a court of general jurisdiction in the state where the federal court is located. See also, *Ferrero v. Associated Materials,* 923 F.2d 1441, 1444-46 (11th Cir. 1991).  However, as set forth above, Petitioner is not seeking preliminary relief without notice to the respondents.

Petitioner does reasonably believe that her lack of access to her rightful interest in the subject cryptocurrency investment is prejudicial because cryptocurrency, like many other investments, has a volatile market value and she is being denied access to and control over her investment, including her ability to liquidate that investment.  Petitioner's case is meritorious because the respondents should have no claim of ownership to the subject cryptocurrency. Because the respondents have no claim of ownership, the risk of harm to them should be nil.

Lastly, having unrestrained access to one's assets, absent voluntary relinquishment or involuntary transfer to a conservator, is surely in the public interest.

> O.C.G.A. 9-11-65 (2010), entitled Injunctions and Restraining Orders, provides the following in pertinent part:[7]
>
> (a) Interlocutory injunction.
>
> (1) Notice. No interlocutory injunction shall be issued without notice to the adverse party.
>
> (2) Consolidation of hearing with trial on merits. Before or after the commencement of the hearing of an application for an interlocutory injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application. Even when this consolidation is not ordered, any evidence received upon an application for an interlocutory injunction which would be admissible upon the trial on the merits shall become a part of the record on the trial and need not be repeated upon the trial. This paragraph shall be construed and applied so as to save any rights of the parties which they may have to trial by jury.
>
> . . .
>
> (d) Form and scope of injunction or restraining order. Every order granting an injunction and every restraining order shall be specific in

---

[7] O.C.G.A. 9-11-65 (2010), subsection (c) subtitled "Security" provides the following:

As a prerequisite to the issuance of a restraining order or an interlocutory injunction, the court may require the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been enjoined or restrained wrongfully. A surety upon a bond or undertaking under this Code section submits himself to the jurisdiction of the court and irrevocably appoints the clerk of the court as his agent upon whom any papers affecting his liability on the bond or undertaking may be served. His liability may be enforced on motion without the necessity of an independent action. The motion and such notice of the motion as the court prescribes may be served on the clerk of the court, who shall forthwith mail copies to the persons giving the security if their addresses are known.

terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive notice of the order by personal service or otherwise.

### (b) Standing.

A plaintiff has standing to assert a claim in federal court where: (1) she can show she has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, rather than conjectural or hypothetical; (2) the injury is fairly traceable to conduct of the defendant(s); and (3) it is likely, rather than merely speculative, that the injury will be redressed by a favorable decision. *See Kelly v. Harris,* 331 F.3d 817, 819-20 (11th Cir.2002). For the reasons set forth above, Petitioner has demonstrated standing to bring this proceeding.

### (c) Jurisdiction

In *Walden v. Fiore,* 571 U.S. 277, 283-84 (2014), the Supreme Court ruled that a plaintiff has the burden of establishing a prima facie case of personal jurisdiction over a nonresident defendant. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1268-69 (11th Cir. 2002). This burden is satisfied when the plaintiff presents sufficient evidence to defeat a motion for directed verdict. *Id.* at 1269. Where a plaintiff's complaint and supporting evidence conflict with

defendant's affidavits, Courts must construe all reasonable inferences in favor of the plaintiff. *Id.*

The Due Process Clause protects a person's liberty interest in not being subject to binding judgments of a forum with which he or she has established no meaningful `contacts, ties, or relations. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement,* 326 U.S. 310, 319 (1945)).

The Supreme Court recognizes two types of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.,* 137 S. Ct. 1773, 1779-80 (2017). For specific jurisdiction, "the *suit* must arise out or relate to the defendant's contacts with the forum. . . . [S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* at 1780. Before exercising specific jurisdiction over a nonresident defendant, federal courts must undertake a two-step inquiry: "the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.,* 593 F.3d 1249, 1257-58 (11th Cir. 2010).

The Georgia long-arm statute imposes independent obligations a plaintiff must establish for the Court to exercise personal jurisdiction that are distinct from the demands of procedural due process. *Id.* at 1259 (interpreting *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, Iowa*, 279 Ga. 672 (2005)).

> A court of this state may O.C.G.A. 9-10-91 (2010) provides that:
>
> exercise personal jurisdiction over any nonresident . . . as to a cause of action arising from any . . . acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:
>
> (1) Transacts any business within this state;
>
> (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;
>
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
>
> (4) Owns, uses, or possesses any real property situated within this state; or
>
> . . .

Here, Petitioner entered into a verbal agreement with Respondent Joon Jack Kim, with encouragement from Respondent Hye Won Shin, when both Joon Jack Kim and Hye Won Shin were personally present in the Northern District of

Georgia. Pursuant to that agreement, Respondent Joon Jack Kim transferred money from Petitioner's bank account located in the Northern District of Georgia to purchase units of cryptocurrency "Bitcoin" as set forth in paragraph 12 above.

Though currently under contract to be sold, Respondent Joon Jack Kim owns real property, i.e. a condominium located in the Northern District of Georgia; both Respondent Joon Jack Kim and Respondent Hye Won Shin, prior to moving to Tennessee, lived in that condominium. Previously, Respondent Hye Won Shin lived with Petitioner in the Northern District of Georgia from age eleven to age 30, except for several months around the age of 18 when Respondent Hye Won Shin returned to her native South Korea.

Respondent Joon Jack Kim currently owns and operates a business in Tennessee for which he travels to the Northern District of Georgia to purchase products and supplies for his business from vendors located in the Northern District of Georgia; Respondent Hye Won Shin accompanies Respondent Joon Jack Kim during these business trips to the Northern District of Georgia.

During these business trips to the Northern District of Georgia, Petitioner and Respondent Joon Jack Kim engaged in discussions which led to the agreement described above for Kim to acquire cryptocurrency for Petitioner, using monies belonging to Petitioner. Respondent Hye Won Shin was present for some of these

discussions between Petitioner and Respondent Joon Jack Kim, and explicitly encouraged the arrangement between Petitioner and Respondent Joon Jack Kim. However, Ms. Shin now appears to be tortiously interfering[8] in the contract between Petitioner and Respondent Joon Jack Kim.

Wherefore, Petitioner requests that the Court take personal and subject matter jurisdiction in this case and order Respondent Joon Jack Kim in the nature of a mandatory injunction, or such other form of relief as the Court may deem just and proper, to provide access to Petitioner's cryptocurrency, i.e. 3.42153424 Bitcoin units, in whatever form currently situated, by transfer of control of Petitioner's interest in the subject cryptocurrency and to take all such further steps as may be necessary to relinquish control over Petitioner's interest in the subject cryptocurrency units and to place control of such units in the possession and control of Petitioner, or such other person or persons whom she may designate, and in the nature of injunction as to Respondent Hye Won Shin ordering that she refrain from taking any further action interfering in the subject contract and in the nature of mandatory injunction, as set forth above, to the extent that she may

---

[8] Georgia recognizes tortious interference with contract. The elements are: (1) improper action or wrongful conduct by the tortfeasor without privilege; (2) the tortfeasor acted purposely and with malice with the intent to injure; (3) the tortfeasor induced a breach of contract obligations; and (4) the tortfeasor's conduct proximately caused damage to the party raising it. *Dalton Diversified, Inc. v. AmSouth Bank,* 270 Ga. App. 203, 208-09 (2004).

currently possess any kind of dominion and/or control over the subject cryptocurrency.

This 20th day of May 2021.

**Barclift, Olubunmi, and Kim, LLC**

*/s/ Robert P. Barclift*
Robert P. Barclift
Bar No.: 845529
robertbarclift@gmail.com

*/s/ Ingoo "Kevin" Kim*
Ingoo "Kevin" Kim
Georgia Bar No.: 655724
ingookevinkim@gmail.com

Attorneys for Plaintiff
125 Clairemont Ave., Suite 515
Decatur, Georgia 30030

678-770-3050

## Verification

Petitioner, Chong Hui Topasna, does hereby certify and declare under penalty of perjury pursuant to 28 U.S.C. 1746 that the facts as set forth in paragraphs 2 - 4, and 7 - 16 above are true and correct to the best of her knowledge and belief.

This 19th day of May 2021.

_____
Chong Hui Topasna